# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 09-cv-02671-CMA

In re: CRAIG BEATY and SHANNON BEATY,

    Debtors,

JEFFREY HILL, Trustee,

    Plaintiff/Appellant,

v.

CREEKSIDE SOUTHWEST, LLC, a Colorado limited liability company, and
FRANK NAVRATIL,

    Defendants/Appellees.

## ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL

This matter comes before this Court on a Bankruptcy Trustee's appeal of the Bankruptcy Court's Order (Doc. # 35) dismissing, as time-barred, an adversary proceeding initiated by the Trustee. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1), (c)(1) and FED. R. BANKR. P. 8001(e) and 8002. For the following reasons, the Court affirms the Order of the Bankruptcy Court.

# I. BACKGROUND

**Factual[1] and Procedural Background[2]**

CRAIG S. BEATY ("Craig Beaty") and Shannon Beaty (jointly, "Debtors") filed a voluntary Chapter 7 petition on October 14, 2005. Defendant Frank Navratil ("Navratil") is Shannon Beaty's father. Defendant Creekside Southwest, LLC ("Creekside") is a Colorado limited liability company formed in 2003 to acquire real estate in Sedalia, Colorado. At all times relevant, Craig Beaty owned a 1% interest in, and was the managing member of, Creekside, and Navratil owned a 61.4% interest in Creekside.[3]

---

[1] Unless otherwise noted, all facts are taken from the Trustee's Second Amended Complaint.

[2] This case has a tortured procedural history. This Court could find no order by the Bankruptcy Court that either granted or otherwise explicitly accepted the filing of either the First Amended Complaint or the Second Amended Complaint. Nonetheless, there are several orders, including the order which is the basis for this appeal (Doc. # 35), in which the Bankruptcy Court references or makes conclusions based upon the allegations in one or both of the amended complaints. In addition, this Court did not find any pleadings filed by Defendants in response to either the First Amended Complaint or the Second Amended Complaint. Both the parties and the Bankruptcy Court appear to have assumed that the motion to dismiss (Doc. # 5) filed by Defendants Navratil and Creekside in response to the original complaint applied to both the First Amended Complaint and the Second Amended Complaint. A comparison of the allegations of all three complaints, but particularly those contained in the First and Second Amended Complaints, confirmed that the substance of the allegations in all versions of the Trustee's complaints against Defendants Navratil and Creekside remained consistent. Moreover, any differences in the allegations of the different versions of the complaints does not impact the legal analysis necessary to decide this appeal. For purposes of its analysis in this order, this Court will accept those allegations set forth in the Second Amended Complaint because that is what the Bankruptcy Court applied in reaching its conclusions in the order which is the subject of this appeal: "The Second Amended Complaint alleges the following facts, which the Court deems to be true for purposes of ruling on these two Motions." (Doc. # 35 at 1.)

[3] Other owners were Craig Beaty's father, William Beaty who held a 32.4% interest and Brent Trujillo who held a 5.21% interest.

On April 10, 2008, the Trustee filed an adversary proceeding against both Debtors, Navratil, and Creekside asserting three claims: (1) avoidance of a fraudulent conveyance pursuant to C.R.S. § 38-8-105; (2) turnover of Debtor Craig Beaty's 1 % interest in Creekside or debt owed to him by Creekside pursuant to 11 U.S.C. § 542; and (3) damages for civil conspiracy to defraud creditors. (Doc. # 1, ¶¶ 61-76.)[4] The Defendants moved to dismiss the fraudulent conveyance and civil conspiracy claims on the ground they were time-barred. (Doc. ## 4 and 5.) Before the Court ruled on the motion to dismiss, the Trustee filed both his Responses to the Defendants' Motions to Dismiss (Doc. ## 11 and 12) and a First Amended Complaint (Doc. # 10).[5] Defendants filed their respective Replies on June 12, 2008. (Doc. ## 13, 14.) About six months after filing the First Amended Complaint, on December 12, 2008, the Trustee filed a Motion for Leave to File a Second Amended Complaint in which the Trustee alleged similar claims of turnover, conspiracy to deny turnover, and civil conspiracy for fraudulent transfer. (Doc. # 32, and Attach. 1 thereto.)

---

[4] "(Doc. # 1)" is an example of the convention used to identify the docket number assigned to a specific paper by the court's Case Management and Electronic Case Filing system. In this Order, unless otherwise noted, the convention is used to identify the docket number in the Adversary Proceeding filed by the Trustee with the Bankruptcy Court, *i.e.*, Case Number 08-1312.

[5] In the First Amended Complaint, the Trustee did not name Debtors Craig and Shannon Beaty as Defendants nor he did assert a fraudulent transfer claim against the Debtors, as he had done in the original complaint. Thus, it appears that he effectively dismissed the Debtors as defendants in the adversary proceeding and, on August 6, 2008, in an order addressing the Debtors' Motion to Dismiss (Doc. #4), the Bankruptcy Court found that the First Amended Complaint withdrew all claims against Craig and Shannon Beaty. (Doc. # 16, ¶ 2.)

Although the Second Amended Complaint asserted three claims against the two remaining Defendants, Navratil and Creekside, only the second and third claims for relief – "Conspiracy to Deny Turnover" and "Civil Conspiracy for Fraudulent Transfer" – are at issue in this appeal.[6] The Trustee essentially alleges two distinct transactions which he asserts constitute a claim for conspiracy to defraud creditors: 1) fraudulent transfer of the Residence and 2) failure to turnover assets relating to Craig Beaty's ownership interest in Creekside. (Attach. 1 to Doc. # 32, Second and Third Claims for Relief.)

In support of both claims for conspiracy to defraud creditors, the Trustee alleged generally that in the second half of 2004, because he was faced with severe financial losses and burdens, Craig Beaty began developing a scheme to shelter assets. (*Id.*, ¶ 14.) In support of his Third Claim for Relief (Civil Conspiracy for Fraudulent Transfer), the Trustee alleged that Craig Beaty and Navratil conspired to transfer title of the Residence to Navratil with intent to hinder, delay or defraud Beaty's creditors. In preparation therefor, Craig Beaty obtained the following appraisals of the Residence: 1) a January of 2002 appraisal for $851,000; 2) a March of 2003 appraisal for $825,000; and 3) an August of 2004 appraisal for $735,000. Without ever putting the Residence

---

[6] The Trustee's original Notice of Appeal and Statement of Issues included an appeal of the Bankruptcy Court's November 2, 2009 Order granting summary judgment in favor of Navratil on the First Claim for Relief - Turnover. However, the Trustee did not address these issues in his Opening Brief. Thus, this Court considers the appeal of the November 2, 2009 Order to have been abandoned by the appellant and the only issues in this Appeal are whether the civil conspiracy claims were dismissed properly in the March 31, 2009 Order of the Bankruptcy Court.

on the market, Craig Beaty entered into an agreement to allow Navratil to purchase the Residence for $690,000.[7] On November 18, 2004, Navratil delivered a check to Craig Beaty in the amount of $12,843, representing the net proceeds for the sale of the Residence after satisfaction of the deed of trust and other liens on the Residence. Immediately prior to closing, however, Navratil had obtained an appraisal which valued the Residence at $1,000,000. In addition, after the sale of and transfer of title to the Residence to Navratil, the Debtors continued to reside in the Residence. Although the Debtors entered into a Lease Agreement with Navratil for the occupancy of the Residence, the Debtors made no rental payments to Navratil. (*Id.*, ¶¶ 18-33 and 82-92.)

In support of his Second Claim for Relief (Conspiracy to Deny Turnover), the Trustee alleges that Navratil entered into a civil conspiracy with Craig Beaty to deny turnover to the Trustee an unspecified distribution amount to which Craig Beaty was entitled as a result of his ownership interest in Creekside. (*Id.,* ¶¶ 45-70, 78-80.)

On March 31, 2009, the Bankruptcy Court granted the Defendants' Motion to Dismiss both claims for conspiracy to defraud creditors, *i.e.*, fraudulent transfer of the Residence and failure to turnover assets relating to Creekside. The Bankruptcy Court also denied, on the basis of futility, the Trustee's Motion for Leave to File a Second Amended Complaint. (Doc. # 35 at 9.) The Trustee appeals that portion of the Court's order which dismissed both conspiracy claims as time barred.

---

[7] Navratil and Craig Beaty contend that the sales price included an additional $142,000 debt which was forgiven as part of this transaction.

## II. STANDARD OF REVIEW

The Bankruptcy Court's factual findings are subject to a clearly erroneous standard. *In re Baldwin*, 593 F.3d 1155, 1159 (10th Cir. 2010). Its legal conclusions are reviewed *de novo*. *Id*.

## III. DISCUSSION

In this appeal, the Trustee asserts that the Bankruptcy Court's dismissal of both of the Trustee's claims for civil conspiracy to defraud creditors, as time barred, constitutes reversible error because the Court should have applied 11 U.S.C. § 541(a)(1)[8] instead of § 544. However, reviewing the Bankruptcy Court's legal conclusions *de novo*, this Court finds no legal error in the Bankruptcy Court's analysis and determination that the Trustee's civil conspiracy claims were creditor claims, as opposed to claims of the Debtor.

With respect to the Third Claim for Relief – Civil Conspiracy for Fraudulent Transfer related to the Residence – the Bankruptcy Court found that "the injury suffered [was] a diminished bankruptcy estate" and that "[t]his is an injury to all creditors of the estate who will receive less in distributions." (Doc. # 35 at 5.) Thus, the Bankruptcy Court concluded that this claim was not derived from the Debtors' rights, but rather, was a creditor claim. (*Id*. at 5-6.) The Bankruptcy Court further concluded that, because the

---

[8] The Trustee argues that application of 11 U.S.C. § 541(a)(1) would have allowed the application of any unexpired statutes of limitation periods under non-bankruptcy laws which in this case would have included a four year limitation period for conspiracy claim for fraudulent conveyance and no limitation period for the conspiracy to deny turnover claim. (Doc. # 10 in this Appeal, pp. 8-10.

Trustee's claim was a general creditor claim and not a claim asserting a personal harm done to a particular creditor, the Trustee derived his standing to bring this claim pursuant to 11 U.S.C. § 544(a). (*Id.*) The Bankruptcy Court thus held that this claim was time barred by 11 U.S.C. § 546(a)(1).[9] (*Id.* at 8.)

With respect to the Second Claim for Relief – Conspiracy to Deny Turnover related to Craig Beaty's interest in Creekside – the Bankruptcy Court concluded that "[a]lthough styled as a 'conspiracy to deny turnover,' this claim is in essence a claim of conspiracy to defraud creditors." (*Id.*)[10] As such, the Bankruptcy Court similarly concluded that this claim was also a creditor claim; and hence, time barred by 11 U.S.C. § 546(a)(1). (*Id.* at 8.)

In sum, the Bankruptcy Court concluded that both of the Trustee's civil conspiracy claims were creditor claims and, hence, the Trustee derived his standing to bring such claims from § 544 of the Bankruptcy Code. (Doc. # 35 at 6.) The Trustee, however, asserts that he is asserting the rights of the Debtors, and thus, has standing under § 541(a)(1) to bring the civil conspiracy claims. It is true that, under § 541(a)(1), a trustee has standing to assert the "legal or equitable interests of the *debtor* in property"

---

[9] The Trustee does not contest that these claims are time barred if 11 U.S.C. §§ 544 and 546(a)(1) apply, as found by the Bankruptcy Court. Thus, this Court need not repeat the analysis of the interrelationship and application of these two sections to these claims as set forth in the Bankruptcy Court's Order (Doc. # 35 at 3-4).

[10] The Bankruptcy Court distinguished this claim from the claim for turnover; and, noted that the turnover claim regarding the Creekside interest is not subject to the limitations of § 546(a), as the Trustee has standing to pursue the turnover claim pursuant to by 11 U.S.C. §§ 541, 542 (*Id.* at 8).

7

(emphasis added) and it is clear that the application of § 541(a)(1) would be helpful to the Trustee because causes of action brought by the Trustee pursuant to § 541(a)(1) are not subject to the deadlines of 11 U.S.C. § 546(a).

As the Bankruptcy Court properly noted on page five of its Order (Doc. # 35), for a court to determine if the deadline of § 546(a) applies to the Trustee's claims for civil conspiracy, it must first determine whether the claims are assertions of the rights of creditors, or are assertions of the legal interests of the Debtors. *See* 11 U.S.C. §§ 541(a)(1), 544(a), 546(a); *see also Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.)*, 2007 U.S. Dist. LEXIS 65792 at *22-*24 (D. Colo. 2007) (unpublished opinion) (court will answer this question by examining the claims as they are pleaded). The Bankruptcy Court, therefore, examined the conspiracy claim related to the Residence as pled by the Trustee and concluded that it was a creditor claim:

> In the Second Amended Complaint, the Trustee has articulated the injury caused by the Residence Conspiracy as follows:
>
>> 92. The bankruptcy estate of debtors Craig and Shannon Beaty has suffered damages in an amount equal to the value of the Residence at the time of the transfer less the price paid by defendant Navratil for its purchase.
>
> If the allegations in the Second Amended Complaint were to be proven true, then the injury suffered is a diminished bankruptcy estate. This is an injury to all creditors of the estate who will receive less in distributions. This is not a claim that is derived from the Debtors' rights.

(Doc. # 35 at 5.)

In footnote 3 of the order, the Bankruptcy Court indicated:

> In addition, in paragraph 88 of his Second Amended Complaint, the Trustee alleges that the transfer of the Residence was avoidable pre-petition by creditors as fraudulent under C.R.S. §38-8-105. The conspiracy asserted by the Trustee is based on creditor's rights under CUFTA. CUFTA speaks to fraud "as to a creditor, whether the creditor's claim arose before or after the transfer was made." C.R.S. § 38-8-105(1). In Double Oak Constr., LLC v. Cornerstone Dev. Int'l LLC, 97 P.3d 140, 146-47 (Colo.App. 2003), the Colorado Court of Appeals held that a creditor who did not have a lien on the subject property was nevertheless entitled to assert a civil conspiracy claim against persons who participated in the fraudulent conveyance.

(Doc. # 35 at 5 n.3.)

The Bankruptcy Court undertook a similar analysis for the conspiracy claim related to Debtor's interest in Creekside and, likewise, determined that it was a creditor claim stating:

> Although styled as a "conspiracy to deny turnover," this claim is in essence a claim of conspiracy to defraud creditors. The injury alleged is the same, the diminished estate and prejudicial delay attendant to Navratil's failure to turn over the distribution owed to Beaty. Thus, it too is a creditor claim and the Trustee's ability to bring this claim is derived from § 544(a).

(Doc. # 35 at 8.)

This Court concurs with the Bankruptcy Court's conclusions regarding both of these claims being creditor claims rather than debtor claims and, to the extent that the Trustee has standing to pursue the civil conspiracy claims, that standing is derived from 11 U.S.C. § 544 and, in this case, those claim are time barred by 11 U.S.C. § 546(a).[11]

---

[11] The Court is not persuaded by the Trustee's argument that § 546(a) does not operate to cut off a trustee's right to sue when the non-bankruptcy time period has not expired. *See In re Quality Pontiac Buick GMC Truck, Inc.*, 222 B.R. 865, 1998 Bankr. LEXIS 1374 at *11

9

Therefore, the Bankruptcy Court was correct in granting the Motion to Dismiss as to both of the civil conspiracy claims.

## IV. CONCLUSION

IT IS HEREBY ORDERED: For the aforestated reasons, the March 31, 2009 Order of the Bankruptcy Court dismissing the Trustee's civil conspiracy claims is AFFIRMED.

DATED: September __30__, 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

(Bankr. D. Minn. 1998) (finding that because the trustee's standing derived from § 544, the claim was subject to the limitation of § 546, despite the fact that the claim was brought prior to the expiration of the state law six year statute of limitations: "without the specific empowerment of [§ 544], the trustee would lack standing. By its very terms, then, § 546(a) requires actions commenced with the empowerment of § 544 to be brought by its deadlines"); *see also Krigel v. Noble (In re Am. Energy Trading, Inc.)*, 291 B.R. 159, 2003 Bankr. LEXIS 306 at *14 (W.D. Mo. 2003) ("'If the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to section 544(b), *provided that it is commenced within the section 546(a) limitations period*'") (quoting COLLIER ON BANKRUPTCY, P 546.02[1][b], p. 546-10) (emphasis in original); *In re Naturally Beautiful Nails, Inc.*, 243 B.R. 827, 828-29 (M.D. Fla. 1999) (the "Court is in agreement with the holding of *In re Gerardo Leasing, [inf]ra*, and is satisfied that the correct reading of Section 546(a) permits but one conclusion, that the two year limitation governs the suit", regardless of the fact that the four year statute of limitations pursuant to state law had not run); *In re Gerardo Leasing*, 173 B.R. 379, 386, 388 (N.D. Ill. 1994) ("Voiding actions brought under § 544(b) . . . are therefore more appropriately subject to the specific federal statutes of limitations set forth in § 546(a)") (citation omitted).